

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: August 17, 2018.**

_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| COTTER TOWER - OKLAHOMA, L.P., | § | CASE NO. 17-52844-CAG |
| | § | |
| DEBTOR | § | CHAPTER 11 |

### ORDER APPROVING SALE OF PROPERTY OF THE ESTATE
### FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS

On this day, came on to be considered the Motion to Sell Property of the Estate Free and Clear of Liens, Claims, Encumbrances and Interests (the "Sale Motion") filed by Cotter Tower-Oklahoma, L.P. (the "Debtor" or "Seller" herein). The Court, having considered the Sale Motion, the record in the case, the evidence presented, and the statements and argument of counsel, finds that the Motion has merit and should be **APPROVED** as provided herein.

In connection with this Order, the Court makes the following findings of fact and conclusions of law herein for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are

adopted as such.   To the extent any conclusions of law are findings of fact, they are adopted as such.

### Jurisdiction, Final Order and Statutory Predicates

1.      The Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested in the Motion are sections 105(a) and 363 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Property to be Conveyed

3.      The Court finds that the following property is the subject of this Order:

The real property generally located at 100 N. Broadway, Oklahoma City, Oklahoma 73102, commonly known as Cotter Ranch Tower, which is more particularly described on Exhibit "A" attached hereto (the "Land");

The buildings located on the Land, and all associated parking areas, sidewalks, signs, fixtures, landscaping and all other improvements located on the Land, together with all machinery and mechanical, electrical, HVAC, and plumbing systems on the Land (collectively, the "Improvements"), provided that the Improvements shall exclude the statue which is a likeness of James F. Cotter on a horse in the event that Seller has removed the statue prior to the Close of Escrow;

All of Seller's right, title, and interest in and to all rights, privileges, streets, alleys, easements, and rights of way in, on, across, in front of, abutting, or adjoining the Land and all other appurtenances benefiting the Land or belonging thereto, including, without limitation, all mineral and water rights and all easements, rights-of-way and other appurtenances used or connected with the beneficial use or enjoyment of the Land (the "Appurtenances" and collectively with the Land and the Improvements, the "Real Property");

All of Seller's right, title, and interest in and to all personal property, equipment, supplies and fixtures (collectively, the "Tangible Personal Property") listed on Exhibit "B" attached to the Agreement described in paragraph 8 below or otherwise left on the Real Property at the Close of Escrow to the extent owned by Seller;

All of Seller's right, title, and interest in and to any intangible property (expressly excluding the name "Cotter" or "Cotter Ranch Tower" or any derivative thereof, or any name that includes the word "Cotter" or any derivative thereof) used or useful in connection with the foregoing, including, without limitation, all contract rights, warranties, insurance claims (including, without limitation, any pending claims related to the curtain wall which forms a part of the Improvements), guaranties, licenses, permits, entitlements, governmental approvals and certificates of occupancy which benefit the Real Property and/or the Tangible Personal Property (the "Intangible Personal Property" and together with the Tangible Personal Property, the "Personal Property");

All of Seller's right, title, and interest in and to all leases affecting the Real Property listed on Exhibit "C" attached to the Agreement described in paragraph 8 below and any order of the Court approving the assumption and assignment of Seller's right, title and interest in and to unexpired real property leases (the "Leases");

All of Seller's right, title, and interest in and to the contracts listed on Exhibit "C" attached to the Agreement described in paragraph 8 below and any order of the court approving the assumption and assignment of Seller's right, title and interest of the Seller in and to executory contracts (the "Contracts");

(collectively, all of the foregoing shall hereinafter be referred to as "the Property").

## Background

4.      The Debtor in this case is a Texas Limited Partnership with its principal place of business located in San Antonio, Texas.   Debtor is the owner of the Property.

5.      On December 12, 2017, Debtor filed a Voluntary Petition for Relief under Chapter 11 of Title 11, United States Code.   Debtor is acting as a Debtor-in-Possession and thus retains the powers, duties and obligations of a Trustee.

6.      On February 5, 2018, the Debtor filed an Application to Employ CBRE, Inc. ("CBRE") as Real Estate Broker for the Debtor-in-Possession (Doc. 36).   An Order Approving the retention of CBRE as Broker for the Debtor was entered on February 22, 2018 (Doc. 41). CBRE marketed the Property employing a thorough and time-tested sales process which

commenced January 15, 2018, and ended on or about May 1, 2018. Specifically, CBRE took the following steps to market the Property:

A.       On or about February 22, 2018, CBRE released an offering announcement, or "flyer", which was a 16-page color brochure entitled "Executive Summary – Cotter Tower", containing basic information about the Property, its location and market, as well as full color photographs of the interior and exterior of the building. CBRE sent the Executive Summary to more than 2,115 buyers in its database, inviting them to seek additional information on the Property.

B.       On or about March 2, 2018, CBRE released an offering memorandum which was a 69-page detailed and full color presentation that addressed significant information relating to the Property, its tenancy, and the Oklahoma City market. A detailed financial analysis of the Property was later included. The offering memorandum was delivered to the 77 potential investors that returned a completed confidentiality agreement.

C.       CBRE set up a Virtual Data Room (the "VDR") containing the following types of documents that a potential buyer would find important prior to making a decision about bidding on the Property: copies of leases, operating statements, service agreements and capital expenditure histories.

D.       CBRE received 77 requests from potential buyers interested in obtaining more information through the VDR. Each potential buyer was required to execute a confidentiality agreement as a condition to accessing the information contained in the VDR. A total of 77 interested parties executed such agreements and accessed information in the VDR.

E.       CBRE set a timeline for potential buyers to make bids on the Property. Buyers

first presented offers beginning April 6, 2018.  Initially, CBRE received a total of eleven (11) bids from prospective buyers.  Thereafter, CBRE narrowed the list to those parties who submitted the highest bids, and set a "Best and Final Bids Due" date for such parties.  CBRE then received updated bids from some of the parties who increased their bids, as well as additional offers.  In total, seven (7) final/revised offers were received on or about April 20, 2018.  Thereafter, CBRE and the Debtor's representatives conducted interviews with the potential buyers.

7.     At the conclusion of the marketing period, Debtor's representative determined that an offer by BancFirst Corporation (hereinafter "Buyer" or "BancFirst") in the amount of $23,000,000.00 was the highest and best offer for the Property.  On April 30, 2018, Debtor's representative advised BancFirst, through the parties' brokers, that it had submitted the best and highest offer.

8.     Counsel for BancFirst, the Debtor, and the Estate of James F. Cotter negotiated and executed a Purchase and Sale Agreement, as described in paragraph 12 below (the "Agreement"). Under the Agreement, the parties acknowledged that "[g]iven the extraordinary marketing period that Seller has conducted, each of Buyer and Seller acknowledges and agrees that it believes this Agreement is the highest and best offer to purchase the Property." Notwithstanding this fact, Debtor's representative desired to sell the Property for the highest price possibly attainable and therefore requested that the sale contemplated under the Agreement facilitate a procedure whereby a higher and like bid could possibly be submitted if a potential qualified buyer desired to do so.  BancFirst agreed to such procedure, subject to certain bid protections set forth in the Agreement which recognized the significant time and expense

expended by BancFirst in its effort to acquire the Property.

9.      On July 2, 2018, the Debtor filed a Motion for an Order: (I) Approving Procedures for the Sale of 100 N. Broadway Ave., Oklahoma City, Oklahoma, (II) Approving Certain Bid Protections, and (III) Approving the Form, Manner and Sufficiency of Notice [Doc. 69] (the "Sale Procedures Motion").   The Court conducted a hearing on the Sale Procedures Motion on July 18, 2018.   On July 20, 2018, the Court entered an Order approving the Sale Procedures Motion [Doc. 76] (the "Sale Procedures Order").   Debtor's counsel properly served a copy of the Sale Procedures Order on all parties in interest in this case on July 23, 2018, advising said parties of the procedures applicable to the sale and requirements in the event any party desired to submit a Qualified Bid (as defined in the Agreement) greater than the Purchase Price offered by BancFirst.

10.      Prior to the expiration of the due diligence period provided in the Agreement, BancFirst determined that it could not purchase the Property at the sales price set forth in the Agreement due to actual and impending loss of tenants and resultant loss of rental revenue and significantly higher than expected building infrastructure renovation, deferred maintenance and repair costs required for the Property.   Therefore, BancFirst notified the Debtor's representatives of its intent to exercise its option to formally terminate the agreement prior to the expiration of the due diligence period.

11.      Debtor's representatives, after consultation with the Debtor's broker and counsel, conferred with representatives from BancFirst concerning a price reduction.   Thereafter, the parties mutually agreed to an amendment to the Agreement with a purchase price of Twenty-One Million Dollars ($21,000,000.00).

12.     On August 1, 2018, Debtor and BancFirst executed an Amendment to the Agreement, modifying the purchase price (the "Amendment").  Debtor's counsel immediately filed herein and served upon all parties in interest a "Notice of Contract Amendment" [Doc. 81] describing the change in the purchase price and advising that any party wishing to submit a Qualified Bid under the Sale Procedures Order must base its bid upon a $21,000,000 purchase price, and submit such Qualified Bid on or before August 10, 2018, at 5:00 P.M. Central Standard Time to Debtor's counsel.   The bid protections contained in the Sale Procedure Order were not modified.

13.     Debtor's counsel did not receive any other bids or offers to purchase the Property on or before the deadline specified in the Notice of Contract Amendment.  Further, Debtor's counsel received no inquiries, offers, or other bids prior to the hearing on the Sale Motion.

**Notice of the Sale**

14.     Notice of the Sale Motion and the proposed entry of this Order was provided to all known parties in interest, including (i). all creditors and parties in interest listed on the Court's master service list filed in this case; (ii). The Office of the United States Trustee; (iii). the Internal Revenue Service; (iv). all parties who are known to possess or assert a lien, claim, encumbrance or interest in or upon the Property (as defined herein) and their attorneys of record entering an appearance herein; and (v). all applicable United States, state or local regulatory or taxing authorities, recording offices or any governmental entity which have a reasonably known interest in the Property.

15.     Notice of the sale of the Property (the "Sale") and the hearing on the Sale Motion (the "Sale Hearing") was reasonably calculated to provide all interested parties with timely and proper notice of the Sale and Sale Hearing.

16.     As evidenced by the certificates of service previously filed with the Court, proper, timely, adequate and sufficient notice of the Sale Hearing, Sale and the transactions contemplated thereby was provided in accordance with the orders previously entered by this Court, section 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 2002, 6006, 9007 and 9014.   The notices described herein were good, sufficient and appropriate under the circumstances, and no other or further notice of the Sale Motion, Sale Hearing, or the Sale is or shall be required.   Notice was adequate and sufficient under the circumstances of the case, and such notice complied with all applicable requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court.

17.     The disclosures made by the Debtor concerning the Agreement, Sale Motion, Sale and designation of Buyer as the maker of the Highest and Best Bid were good, complete and adequate.

18.     A reasonable opportunity to object and be heard with respect to the Sale and the Sale Motion and the relief requested therein has been afforded to all interested persons and entities.

**Good Faith of Purchaser**

19.     The Agreement and Amendment were negotiated, proposed and entered into by the Debtor and the Buyer without collusion, in good faith and from arms'-length bargaining positions.

20.    The Buyer is not an "insider" or "affiliate" or the Debtor as those terms are defined in the Bankruptcy Code.   Neither the Debtor nor the Buyer have engaged in any conduct that would cause or permit the Agreement or Amendment to be avoided under section 363(n) of the Bankruptcy Code.   Specifically, the Buyer has not acted in a collusive manner with any person, and the aggregate price paid by the Buyer for the Property was not controlled by any agreement among competing bidders for the Property.

21.    The Buyer is purchasing the Property in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code.   The Buyer proceeded in good faith in connection with all aspects of the Sale, including: (i) agreeing to subject its bid to the competitive bidding procedures set forth in the Sale Procedures Order; (ii) neither inducing nor causing the Debtor's Chapter 11 filing; and (iii) disclosing all payments to be made by the Buyer in connection with the Sale.   Accordingly, the Buyer is entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code.

**Highest or Otherwise Best Offer**

22.    The Buyer submitted the highest and best offer for the Property.   In accordance with the Sale Procedures Order, and in recognition of the extensive marketing procedure conducted by the Debtor before the entry of the Sale Procedures Order, potential bidders wishing to submit a Qualified Bid (as defined therein) were afforded a reasonable opportunity to submit such bids, no competing bids were submitted to Debtor's counsel as provided in the Sale Procedures Order and, accordingly, it was not necessary for the Court to conduct an auction for the Property.   The Court finds that it has been publicly announced since December, 2017, that the Debtor desired to sell the Property, that the Debtor's Broker marketed the Property

thoroughly and diligently as described in the Sale Procedures Order entered herein, and that no other person or entity has offered to purchase the Property for an amount that would allow the Debtor's Estate to realize a greater economic value than the offer submitted by Buyer. The Debtor's determination that the Agreement and Amendment constitute the highest and best offer for the Property is a good, valid and sound exercise of the Debtor's business judgment.

### No Fraudulent Transfer

23.     The consideration provided by the Buyer pursuant to the Agreement and Amendment, (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Property, (iii) will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative and (iv) constitutes reasonable equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia. The Debtor's determination that the Agreement constitutes the highest or otherwise best offer for the Property constitutes a valid and sound exercise of the Debtor's business judgment. Approval of the Sale Motion, Agreement and Amendment, and the consummation of the transactions contemplated thereby, is in the best interests of the Debtor, its estate, creditors and other parties-in-interest including the equity owner(s) of the Debtor.

24.     The Buyer is not a mere continuation of the Debtor or its estate and there is no continuity of enterprise between the Buyer and the Debtor. The Buyer is not holding itself out to the public as a continuation of the Debtor. The Buyer is not a successor of the Debtor or its

estate and the Sale does not amount to a consolidation, merger, or de facto merger of Buyer and the Debtor.

## Validity of Transfer

25.     The Debtor and its General Partner have (i) full corporate and partnership power and authority to execute and deliver the Agreement, the Amendment and all other documents contemplated thereby, (ii) all corporate and partnership authority necessary to consummate the transactions contemplated by the Agreement and (iii) taken all corporate and partnership action necessary to authorize and approve the Agreement and the consummation of the transactions contemplated thereby.   The Sale has been duly and validly authorized by all necessary corporate and partnership action.   No consents or approvals, other than those expressly provided for in the Agreement, are required for the Debtor to consummate the Sale, Agreement or transaction contemplated thereby.

26.     The Agreement and Amendment were not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia.   Neither the Debtor nor the Buyer are fraudulently entering into the transaction contemplated by the Agreement and Amendment.

27.     The Debtor has good and marketable title to the Property and is the lawful owner of the Property.   Pursuant to section 363(f) of the Bankruptcy Code, the transfer of the Property to the Buyer will be, as of the closing of the Sale (the "Closing Date"), a legal, valid and effective transfer of the Property, which transfer vests or will vest the Buyer with all right, title, and interest of the Debtor to the Property free and clear of (i) all liens (as that term is defined in

section 101(37) of the Bankruptcy Code), claims and encumbrances (including any right of first offer or refusal regarding or option to purchase any real property) relating to, accruing or arising any time prior to the Closing Date (collectively, the "Liens") and (ii) all debts arising under, relating to or in connection with any act of the Debtor or claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligation, demands, guaranties, options, rights, contractual commitments, restrictions, interests and matters of any kind and nature, whether arising prior to or subsequent to the commencement of this case, and whether imposed by agreement, understanding, law, equity or otherwise.  Notwithstanding the forgoing, the transfer of the Property by the Debtor to the Buyer shall not be construed to invalidate any Leases or Contracts (listed in Exhibit "C" to the Agreement which are to be assumed and assigned to the Buyer at closing.

## Section 363(f) Is Satisfied

28.      The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtor may sell the Property free and clear of any interest in the Property, other than the Leases or Contracts listed in Exhibit "C" to the Agreement which are to be assumed and assigned to the Buyer at closing.

29.      The Debtor may sell the Property free and clear of all Liens, Claims and other interests of any kind or nature whatsoever against the Debtor, its estate or the Property because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.   Those holders of Liens and Claims against the Debtor, its estate, or the Property, who did not object or who withdrew their objections to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

30.     Notwithstanding the foregoing, the Debtor has agreed that American Eagle Title Company (the "Title Company") shall conduct the closing of the sale, and in connection with such closing, shall pay from the proceeds of the Sale the following governmental entities the full amount of taxes or assessments due, pro-rated to the date of closing:

        (A).     Oklahoma County Treasurer; and

        (B).     City of Oklahoma City

31.     Notwithstanding the foregoing, the Debtor has agreed that Bank SNB (a division of Simmons Bank) shall be paid in full at closing by the Title Company closing the sale from the proceeds of the Sale.  Debtor has also agreed that the Title Company shall pay, at closing, the full amount due and owing to the following Mechanic's and/or Materialman's lien claimants: Roto Rooter, Coe Plumbing, Inc., iPlumb Co., and American Staffcorp of OKC, LLC.

### Compelling Circumstances for an Immediate Sale

32.     Good and sufficient reasons for approval of the Agreement, the Amendment and the Sale have been articulated.   The relief requested in the Sale Motion is in the best interests of the Debtor, its estate, its creditors and other parties-in-interest, including the equity owners of the Debtor.   The Debtor has demonstrated (i) good, sufficient and sound business purposes and justifications for approving the Agreement and Amendment, and (ii) compelling circumstances for the Sale outside of (a) the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code and (b) a plan of reorganization, in that, among other things, the immediate consummation of the Sale to the Purchaser is necessary and appropriate to maximize the value of the Debtor's estate and the Sale will provide the means for the Debtor to maximize distributions to its creditors and equity owners.

33.     Given all of the circumstances of this Chapter 11 case and the adequacy and fair value of the Purchase Price under the Agreement and Amendment, the proposed Sale constitutes a reasonable and sound exercise of the Debtor's business judgment and should be approved.

34.     The Sale does not constitute a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.   The Sale neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates a liquidating plan of reorganization for the Debtor.

### General Provisions

It is therefore, **ORDERED, ADJUDGED and DECREED** that the Sale Motion is in all respects **GRANTED**.

It is further **ORDERED, ADJUDGED and DECREED** that any objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived or settled by announcement to the Court during the Sale Hearing, the provisions of this Order, or by stipulation filed with the Court, including any and all reservations of rights included in such objections or otherwise (except any reservations of right and objections expressly preserved in this Order), are hereby denied and overruled with prejudice.   Those parties who did not object or withdraw their objections to the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code to the Sale of the Property in accordance with the terms of this Order.

It is further **ORDERED, ADJUDGED and DECREED** that all terms of the Agreement and Amendment are hereby approved, unless modified by this Order.

It is further **ORDERED, ADJUDGED and DECREED** that, pursuant to sections 363(b)

and (f) of the Bankruptcy Code, the Debtor is authorized and empowered to take any and all actions necessary or appropriate to (i) consummate to Sale pursuant to and in accordance with the terms and conditions of the Agreement and Amendment, (ii) close the Sale as contemplated by the Agreement, Amendment and this Order, and (iii) execute and deliver, perform under, consummate, implement and fully close the Agreement and Amendment, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the same and the Sale.

It is further **ORDERED, ADJUDGED and DECREED** that this Order shall be binding in all respects upon (a) the Debtor, (b) its estate, (c) all creditors of, and holders of equity interests in, the Debtor, (d) all holders or Liens, Claims or other interests (whether known or unknown) in, against or on all or any portion of the Property, (e) the Buyer and all successors and assigns of the Buyer, (f) the Property and (g) any trustees, if any, subsequently appointed in the Debtor's chapter 11 case or upon a conversion of this case to a case under chapter 7 of the Bankruptcy Code.    This Order and the consideration contained in the Agreement and Amendment shall inure to the benefit of the Debtor, its estate and creditors, the Buyer and the respective successors and assigns of each of the foregoing.

### Transfer of the Property

It is further **ORDERED, ADJUDGED and DECREED** pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtor is authorized to transfer the Property to the Buyer, and such transfer shall (a) constitute a legal, valid, binding and effective transfer of the Property, (b) vest the Buyer with title to the Property and (c) upon the Debtor's receipt of the Purchase Price, be free and clear of all Liens, Claims and other interests of any kind or nature

whatsoever, including but not limited to, successor or successor-in-interest liability and Claims, with such Liens, including mechanics, materialmen and subcontractor Liens and rights to receive payment of trust funds, Claims and other interests to attach to the proceeds of the Sale in the order of their priority, with the same validity, force and effect which they now have as against the Property. Upon the closing of the Sale (the "Closing"), the Buyer shall take title to and possession of the Property.

It is further **ORDERED, ADJUDGED and DECREED** that at Closing, the Title Company shall be and is hereby authorized and directed to pay the full amount of taxes or assessments due and owing to the following governmental entities, pro-rated to the date of closing:

      (A).    Oklahoma County Treasurer; and

      (B).    City of Oklahoma City

It is further **ORDERED, ADJUDGED and DECREED** that at Closing, the Title Company shall pay the full amount due and owing to Bank SNB (a division of Simmons Bank).

It is further **ORDERED, ADJUDGED and DECREED** that at Closing, the Title Company shall pay the full amount due and owing to the following Mechanic's and/or Materialman's lien claimants: Roto Rooter, Coe Plumbing, Inc., iPlumb Co., and American Staffcorp of OKC, LLC.

It is further, **ORDERED, ADJUDGED and DECREED** that at Closing, the Title Company shall pay from the proceeds of the Sale the Brokerage commission and reimbursement of marketing expenses of CBRE, Inc. and all other closing costs attributable to the Seller under the Agreement. Provided, however, that BancFirst shall have no liability with respect to payment

*Page -16-*

of CBRE's brokerage commission or marketing expenses.

It is further **ORDERED, ADJUDGED and DECREED** that the Title Company shall also pay the sum of $178,000.00 to the United States Trustee at the following address, which sum will be applied to the Debtor's quarterly U.S. Trustee's fees:

> U.S. Trustee Payment Center
> P.O. Box 530202
> Atlanta, GA 30353-0202
> Re: Cotter Tower – Oklahoma, L.P., 425-17-52844

It is further **ORDERED, ADJUDGED and DECREED** that the Title Company shall hold the net sales proceeds, after payment of the foregoing parties and closing costs, until further order of this Court.

It is further **ORDERED, ADJUDGED and DECREED** that all persons or entities that are in possession of some or all of the assets comprising the Property on the Closing Date are directed to surrender possession of the same to the Buyer or its assignee at the Closing. The provisions of this Order authorizing the sale of the Property free and clear of Liens, Claims and other interests of any kinds or nature whatsoever shall be self-executing, and neither the Debtor nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate and implement the provisions of this Order, other than the documents referenced in the Agreement.

It is further **ORDERED, ADJUDGED and DECREED** that the Debtor and its General Partner are hereby authorized to take any and all actions necessary to consummate the Agreement and Amendment, including any actions that otherwise would require further approval by shareholders or any of the Debtor's boards of directors or boards of managers, as the case may be, without the need of obtaining such approvals.

*Page -17-*

It is further **ORDERED, ADJUDGED and DECREED** that after the Closing has occurred, a certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any liens and other encumbrances of record.

It is further **ORDERED, ADJUDGED and DECREED** that if any person or entity which has filed statements or other documents or agreements evidencing Liens on, or interests in, all or any portion of the Property, shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and any other documents necessary for the purpose of documenting the release of all Liens or interests which the person or entity has or may assert with respect to all or any portion of the Transferred Assets, the Debtor is hereby authorized and directed, and the Buyer is hereby authorized, on behalf of the Debtor and each of the Debtor's creditors, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Property after the Closing has occurred in accordance with the Agreement and this Order.

It is further **ORDERED, ADJUDGED and DECREED** that on the Closing Date (and after the Closing has occurred in accordance with the Agreement, the Amendment and this Order), this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Debtor's interests in the Property. This Order is and shall be effective as a determination that, on the Closing Date, all Encumbrances and other interests of any kind or nature whatsoever existing as to the Property prior to the Closing Date, including without limitation any hypothecation, encumbrance, liability, Lien, Claim, Interest, security interest, security agreement, interest, mortgage, pledge,

restriction, covenant, charge, license, preference, reclamation claim, cause of action, suit, contract, right of first refusal, offset and recoupment (except as specifically excepted in this Order) alter-ego, transferee or successor liability claims, tax (including federal, state and local tax), Governmental Order of any kind or nature, conditional sale or other title retention agreement or lease having substantially the same effect as any of the foregoing, assignment or deposit arrangement in the nature of a security device, whether secured, unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, perfected or unperfected, allowed or disallowed, matured or unmatured, disputed or undisputed, material or immaterial, known or unknown (referred collectively, whether having arisen, been incurred or accrued prepetition or postpetition, whether imposed by agreement, understanding, law, equity or otherwise, as "Encumbrances") pursuant to Section 363(f) of the Bankruptcy Code (other than Leases and Contracts specifically assumed and assigned at Closing), shall have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected.   This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any Lease or Contract; and each of the foregoing persons and entities is hereby directed to accept for filing any and all

of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

It is further **ORDERED, ADJUDGED and DECREED** that to the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any (i) federal, state, or local governmental or regulatory license, permit, registration, and (ii) governmental authorization or approval of the Debtor with respect to the Property, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, deemed to be transferred to the Buyer as of the Closing Date.

It is further **ORDERED, ADJUDGED and DECREED** that to the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Property sold, transferred or conveyed to the Buyer on account of the filing or pendency of the Debtors' chapter 11 case or the consummation of the Sale contemplated by the Agreement. Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Sale contemplated by the Agreement and this Order.

It is further **ORDERED, ADJUDGED and DECREED** that notwithstanding anything contained in this Order or the Agreement to the contrary, nothing in this Order or the Agreement releases Buyer from compliance with any applicable license, permit, registration, authorization, or approval of or with respect to a governmental unit as though such sale took place outside of bankruptcy.  Buyer shall continue to honor and comply with the terms and requirements of any such applicable license, permit, registration, authorization or approval.

It is further **ORDERED, ADJUDGED and DECREED** that notwithstanding anything contained in this Order or the Agreement to the contrary, nothing in this Order or the Agreement shall authorize the transfer or assignment of any license if such transfer or assignment is prohibited by applicable nonbankruptcy law.

### Prohibition of Actions Against the Buyer

It is further **ORDERED, ADJUDGED and DECREED** that, except as expressly provided for in this Order or the Agreement, the Buyer shall not have any liability or other obligation of the Debtor arising under or related to the Property, and the Buyer is not a "successor" to the Debtor or its estate by reason of any theory of law or equity, and the Buyer shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtor and/or its estate under any theory of law or equity. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Agreement, the Buyer shall not be liable for any Claims against the Debtor or any of its respective predecessors or affiliates, and the Buyer shall have no successor, transferee or vicarious liabilities of any kind or character.

It is further **ORDERED, ADJUDGED and DECREED** that, effective as of the Closing Date and except as otherwise expressly provided for in this Order or the Agreement, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding Liens, Claims or other interests of any kind or nature whatsoever against or in all or any portion of the Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated,

senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtor, the Property, the operation of the Debtor's business prior to the Closing Date or the transfer of the Property to the Buyer, hereby are forever barred, estopped and permanently enjoined from asserting against the Buyer, and any of its affiliates, any of the foregoing's successors, assigns, assets or properties or the Property, such persons' or entities' Liens, Claims or interests in and to the Property, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against the Buyer, any of its affiliates or any of the foregoing's successors, assigns, assets or properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Buyer, any of its affiliates or any of the foregoing's successors, assigns, assets or properties; (c) creating, perfecting or enforcing any Lien or other Claim against the Buyer, any of its affiliates or any of the foregoing's successors, assigns, assets or properties; (d) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Buyer, any of its affiliates or any of the foregoing's successors or assigns (except for those counterparties to the Leases or Contracts expressly assumed under the Agreement); (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order, other orders of the Court or the Agreement or actions contemplated or taken in respect thereof; (f) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate part or all of the Property or conduct any of the business operated with the Property.

It is further **ORDERED, ADJUDGED and DECREED** that, on the Closing Date (and after the Closing has occurred in accordance with the Agreement, the Amendment and this

Order), or as soon as possible thereafter, each creditor is authorized and directed, and the Buyer is hereby authorized, on behalf of each of the Debtor's creditors, to execute such documents and take all other actions as may be necessary to release Liens, Claims and other interests in or on the Property (except as otherwise provided in this Order), if any, as provided for herein, as such Liens, Claims and interests may have been recorded or may otherwise exist.

It is further **ORDERED, ADJUDGED and DECREED** that the Debtor is authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Agreement and Amendment, any related agreements and this Order, and all such other actions, filings or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtor may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the applicable business corporation, trust and other laws of the applicable governmental units, including for the change of the Debtor's corporate name, with respect to the implementation and consummation of the Agreement, any related agreements and this Order, and the transaction contemplated thereby and hereby.

It is further **ORDERED, ADJUDGED and DECREED** that all persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Property to the Buyer in

accordance with the terms of the Agreement, the Amendment, and this Order.

It is further **ORDERED, ADJUDGED and DECREED** that after the Closing has occurred in accordance with the Agreement, the Amendment, and this Order, the Buyer will have given substantial consideration under the Agreement and the Amendment for the benefit of the Debtor, its estate, its creditors, and its equity owners. The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential Claims and Liens pursuant to the Order, which releases shall be deemed to have been given in favor of the Buyer by all holders of Liens against, interests in or Claims against any of the Debtor or the Property.   The consideration provided by the Buyer for the Property under the Agreement is fair and reasonable and accordingly the purchase may not be avoided under section 363(n) of the Bankruptcy Code.

It is further, **ORDERED, ADJUDGED and DECREED** that the transactions contemplated by the Agreement and Amendment are undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and such Sale are duly stayed pending appeal.   Buyer is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

It is further, **ORDERED, ADJUDGED and DECREED** that this Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, Federal Rule of Civil Procedure 62(a) or otherwise.   The Debtor and the Buyer are authorized to

close the Sale immediately upon entry of this Order.

# # #


Order Submitted By:

H. Anthony Hervol
LAW OFFICE OF H. ANTHONY HERVOL
4414 Centerview Drive, Suite 200
San Antonio, Texas 78228
(210) 522-9500
(210) 522-0205 (Fax)
email: hervol@sbcglobal.net

## EXHIBIT A

### Description of Real Property

#### TRACT I

Lots One (1) to Nine (9), inclusive; the West fifteen feet (15') of Lot Ten (10); the West fifteen feet (15') of the South one hundred feet (100') of Lot Twenty-three (23); the South One hundred feet (100') of Lots Twenty-four (24) to Twenty-six (26), inclusive; Lots Twenty-seven (27) to Twenty-nine (29), inclusive; and the South ten feet (10') of Lot Thirty (30); the twenty foot (20') East-West vacated alley adjoining and North of Lots One (1) to Nine (9), inclusive, and West fifteen feet (15') of Lot Ten (10); the twenty foot (20') North-South vacated alley adjoining the East of Lots Twenty-seven (27) to Twenty-nine (29), inclusive and the South ten feet (10') of Lot Thirty (30); all in Block Seven (7), in the original plat of Oklahoma City, Oklahoma County, Oklahoma, according to the plat recorded in Book 1, page 2.

#### TRACT II

An easement reserved in Deed of Dedication recorded in Book 3856, page 275, records of Oklahoma County, Oklahoma, ten feet (10') in width from and below the surface of the East ten feet (10') of Lot Ten (10) and of the East ten feet (10') of the South one hundred feet (100') of Lot Twenty-three (23) and of the intervening vacated East-West alley between the East ten feet (10') of said Lots Ten (10) and Twenty-three (23), all in Block Seven (7) in the original plat of Oklahoma City, Oklahoma County, Oklahoma, according to the plat recorded in Book 1, page 2.

#### TRACT III

A non-exclusive easement created under Special Warranty Deed recorded in Book 3917, page 1052, as modified and defined by Determination and Definition of Easement (the "Determination and Definition of Easement") recorded in Book 4010, page 64, all in the records of Oklahoma County, Oklahoma, over a part of Lots Eleven (11) to Fourteen (14), inclusive, and Lots Seventeen (17) to Twenty-two (22), inclusive, all in Block Seven (7) in the original plat of Oklahoma City, Oklahoma County, according to the plat recorded in Book 1, page 2, more particularly described as follows: BEGINNING at a point (Point 0) on the West line of Lot Twenty-two (22) in said Block Seven (7), said point being 23.9 feet South of the Northwest corner of said Lot 22;

THENCE East and parallel to the North line of said Block 7 a distance of 62.0 feet (to Point 1);

THENCE South and parallel to the East line of said Block 7 a distance of 1.9 feet (to Point 2);

THENCE East and parallel to the North line of said Block 7 a distance of 34.0 feet (to Point 3);

THENCE Northeasterly a distance of 58.14 feet to a point on the North line of said Block 7 (to Point 4);

THENCE East along the North line of said Block 7 a distance of 1.99 feet to the Northeast corner of Lot 17 of Block 7 (to Point 5);

THENCE South along the East line of said Lot 17 and along the West right-of-way line of Santa Fe Avenue a distance of 75.0 feet (to Point 6);

THENCE Northwesterly a distance of 44.41 feet to a point 48.3 feet South of the North line of said Block 7 and 36.0 feet West of the East line of said Block 7 (to Point 7);

THENCE West and parallel to the North line of said Block 7 a distance of 52.0 feet (to Point 8);

THENCE Southwesterly a distance of 3.87 feet to a point 50.6 feet South of the North line of said Block 7 and 58.4 feet East of the West line of said Lot 22 (to Point 9);

THENCE South and parallel to the East line of said Block 7 a distance of 33.0 feet (to Point 10);

THENCE West and parallel to the North line of said Block 7 a distance of 1.8 feet (to Point 11);

THENCE South and parallel to the East line of said Block 7 a distance of 19.78 feet (to Point 12);

THENCE East and parallel to the North line of said Block 7 a distance of 1.8 feet (to Point 13);

THENCE South and parallel to the East line of said Block 7 a distance of 121.04 feet (to Point 14);

THENCE East and parallel to the North line of said Block 7 a distance of 17.2 feet (to Point 15);

THENCE South and parallel to the East line of said Block 7 a distance of 26.4 feet (to Point 16);

THENCE West and parallel to the North line of said Block 7 a distance of 9.8 feet (to Point 17);

THENCE North and parallel to the East line of said Block 7 a distance of 19.8 feet (to Point 18);

THENCE West and parallel to the North line of said Block 7 a distance of 65.9 feet (to Point 19);

THENCE North along the West line of said Lots 11 and 22 a distance of 207.16 feet to the point or place of beginning.

The vertical dimensions are more particularly described as follows:

The upper and lower vertical limits for each of the points designated numerically on the description of horizontal dimensions above (Points 0 through 19 and returning to 0) are shown on Exhibit A, attached to the Determination and Definition of Easement. The upper and lower vertical limits between the numerically designated points are determined by interpolation from the profiles shown on Exhibit A. Generally, the lower limit of the vertical easement is governed by the elevation of the garage entrance from Santa Fe Avenue, the sloping truck ramp from said avenue to the lower service level, and the elevation of said lower service level floor. Generally, the upper limit of the vertical easement is governed by the under side of the structural members which support the various floor levels above the previously described lower limit line.

A-2

**TRACT IV**

Easement rights created by Reciprocal Easement Agreement (the "Reciprocal Easement") recorded in Book 4793, page 1345 of the records in the office of the County Clerk of Oklahoma County, State of Oklahoma, over the portion of Lots One (1) through Five (5), inclusive, and the West 10 feet 3 inches of Lot Six (6), in Block Six (6) original plat of Oklahoma City, Oklahoma County, Oklahoma, included in the Description of the Passageway shown on Exhibit "C" to the Reciprocal Easement.